**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**PATRICIA MEADORS, ANN MARIE**
**LEGG, NANCY REYES, and PATRICIA**
**WATSON,**

**Plaintiffs,**

**v.**                                                                            **1:09-CV-550**
                                                                                    **(FJS/RFT)**

**ULSTER COUNTY; PAUL J. VAN**
**BLARCUM, in his official capacity as Sheriff**
**of Ulster County and individually;**
**RICHARD BOCKELMANN, in his official**
**capacity as Sheriff of Ulster County and**
**individually; BRADFORD EBEL, in his**
**official capacity as Superintendent of Ulster**
**County Jail and individually; and RAY**
**ACEVEDO, in his official capacity as**
**Deputy Superintendent of Ulster County**
**Jail and individually,**

**Defendants.**
_____

**APPEARANCES**                                    **OF COUNSEL**

**RANNI LAW FIRM**                                 **JOSEPH J. RANNI, ESQ.**
148 North Main Street
Florida, New York 10921
Attorneys for Plaintiffs

**JACOBOWITZ & GUBITS, LLP**                       **ROBERT E. DINARDO, ESQ.**
158 Orange Avenue
Walden, New York 12586-0367
Attorneys for Plaintiffs

**ROEMER WALLENS GOLD**                            **EARL T. REDDING, ESQ.**
**& MINEAUX, LLP**                                 **MATTHEW J. KELLY, ESQ.**
13 Columbia Circle
Albany, New York 12203
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Currently before the Court is Defendants' motion for summary judgment. *See* Dkt. No. 29.[1] Plaintiffs oppose this motion. *See* Dkt. Nos. 33-40.

### II. BACKGROUND

In July 2008, Plaintiffs filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights ("NYSDHR"), alleging sex discrimination and hostile work environment sexual harassment. *See* Dkt. No. 38-7 at 3; Dkt. No. 38-9 at 3; Dkt. No. 38-11 at 3; Dkt. No. 38-13 at 1. Thereafter, on May 11, 2009, Plaintiffs, corrections officers at the Ulster County Jail,[2] filed the instant action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), New York State Human Rights Law ("NYSHRL"), and 42 U.S.C. § 1983. *See generally* Dkt. No. 1, Complaint. In their complaint, all Plaintiffs asserted the following causes of action: (1) disparate treatment claims against all Defendants under Title VII; (2) hostile work environment claims against all Defendants under Title VII; (3) disparate impact claims against all Defendants under Title VII; (4) retaliation claims against all Defendants under Title VII; (5) sexual discrimination claims against all Defendants under NYSHRL; (6) retaliation claims against all Defendants under

---

[1] For ease of reference, the Court's citations to specific page numbers reference the page numbers that the Court's electronic filing system automatically generates.

[2] At the time that Defendants filed their motion, all of the Plaintiffs, except Plaintiff Reyes, were still employed as correction officers.

NYSHRL; (7) sexual discrimination claims against all Defendants under § 1983; and (8) negligent infliction of emotional distress claims against all Defendants. *See id.* at ¶¶ 151-189. In addition, Plaintiff Legg asserted claims of pregnancy discrimination against all Defendants under federal and state law. *See id.* at ¶¶ 194-199.

## III. DISCUSSION[3]

**A.      Procedural issues**

### *1. Defendants' request to sever Plaintiffs' claims and hold separate trials for each Plaintiff*

Although Defendants did not formally move for severance of Plaintiffs' claims, they requested this relief as part of their summary judgment motion. Under Rule 21 of the Federal Rules of Civil Procedure, a "court may [] sever any claim against a party." Fed. R. Civ. P. 21. Courts have broad discretion to decide whether to sever claims. *See Oram v. Soulcycle LLC*, No. 13 Civ. 2976, 2013 WL 5797346, *2 (S.D.N.Y. Oct. 28, 2013) (citation omitted). In deciding whether severance is appropriate, courts consider the following factors, none of which is determinative: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present a common question of law or fact; (3) whether the claims require different witnesses and documentary evidence; (4) whether severance will facilitate judicial economy; and (5) whether severance will avoid prejudice. *See Gerace v. Cliffstar Corp.*, No. 05-CV-65S, 2009

_____

[3] The Court notes that this case is very similar to *Negron v. Ulster Cnty.*, No. 1:08-CV-692. In fact, the parties conducted discovery in this matter and in *Negron* jointly. *See* Dkt. No. 37 at 2. In *Negron*, the plaintiff, who was also a female corrections officer at the Ulster County Jail, asserted substantially the same claims as Plaintiffs allege in this case against the same Defendants.

U.S. Dist. LEXIS 116724, *3-*4 (W.D.N.Y. Dec. 15, 2009) (quotation omitted).  After

reviewing all of these factors, the Court finds that they weigh against severance; and, therefore,

the Court denies Defendants' request for severance.


### 2. Failure to serve a notice of claim with regard to Plaintiffs' state-law claims

"As a 'condition precedent' to commencing a tort action against New York municipalities,

or any of their officers, agents, or employees, New York General Municipal Law § 50-e requires

plaintiffs to file a notice of claim within ninety days after the claim arises."  *Olsen v. Cnty. of*

*Nassau*, No. CV 05-3623, 2008 U.S.  Dist. LEXIS 90426, *3 (E.D.N.Y. Nov. 4, 2008) (citation

omitted).  New York County Law § 52 extends § 50-e's notice-of-claim requirement to any claim

for damages against a "county, its officers, agents, servants or employees[.]"  N.Y. County Law

§ 52(1).  This notice-of-claim provision applies to claims that plaintiffs assert against a

county and its employees pursuant to NYSHRL.  *See Olsen*, 2008 U.S. Dist. LEXIS 90426, at *3;

*Seale v. Madison Cnty.*, 929 F. Supp. 2d 51, 79 (N.D.N.Y. 2013) (dismissing the plaintiff's

NYSHRL retaliation claim because he did not file a notice of claim against the municipal

defendant as GML § 50-e required).  In addition, serving a notice of claim is a condition

precedent to commencing an action against a county's employees insofar as "'the county is

required to indemnify the individual defendants.'"  *Seale*, 929 F. Supp. 2d at 72 (quotation

omitted).

There is no dispute that Plaintiffs did not serve a notice of claim on any of the

Defendants.  Plaintiffs, however, attempt to sidestep this error by arguing that their EEOC

charges satisfy the notice-of-claim requirement with respect to their NYSHRL claims.  This

argument is without merit. *See Cody v. Cnty. of Nassau*, 577 F. Supp. 2d 623, 648-49 (S.D.N.Y. 2008); *Wrenn v. New York City Health & Hosps. Corp.*, 104 F.R.D. 553, 557 (S.D.N.Y. 1985) (citations omitted). Furthermore, with respect to Defendants Van Blarcum, Bockelmann, Ebel and Acevedo, Plaintiffs' complaint lacks any factual allegations to suggest that these Defendants acted outside the scope of their employment in committing the alleged tortious acts. Therefore, Plaintiffs' failure to serve them with a notice of claim is fatal to their NYSHRL claims.

Finally, the Court denies Plaintiffs' request for leave to file a late notice of claim. The Court lacks jurisdiction to grant such relief. *See Van Cortlandt v. Westchester Cnty.*, No. 07 CIV 1783, 2007 U.S. Dist. LEXIS 80977, *23-*24 (S.D.N.Y. Oct. 31, 2007) (quotation and other citation omitted); *Olsen*, 2008 U.S. Dist LEXIS 90426, at *10.

Accordingly, for the above-stated reasons, the Court grants Defendants' motion for summary judgment with respect to Plaintiffs' claim for negligent infliction of emotional distress and their claims of discrimination pursuant to NYSHRL.

### 3. Timeliness of Plaintiffs' Title VII claims

#### a. Disparate treatment and retaliation claims

Before commencing a Title VII action in federal court, a plaintiff must file an administrative charge of discrimination within 300 days of the alleged discriminatory or retaliatory acts. *See* 42 U.S.C. § 2000e-5(e)(1). An exception to the 300-day limitations period occurs, however, where there is a "continuing violation," i.e., where the alleged discriminatory act is committed under an ongoing policy of discrimination. *See Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993). To bring a claim within the continuing violation exception, "a

plaintiff must present a "'specific discriminatory policy'' . . . which amounts to more than a string of allegedly discriminatory acts committed with one motive in mind.'" *Jones v. Onondaga Cnty. Resource Recovery Agency*, No. 5:11-CV-113, 2013 WL 5346815, *6 (N.D.N.Y. Sept. 23, 2013) (quotation and other citation omitted).

In this case, it is undisputed that any alleged acts of discrimination and retaliation that predate September 2007,[4] the expiration of the 300-day limitations period, are time-barred and cannot form the basis of independent claims. Plaintiffs' attempts to salvage these untimely claims under the continuing violation doctrine fail because Plaintiffs have offered nothing more than the conclusory statement that Defendants have maintained "systematic motivations and methods [of discrimination], including the conscious denial of receiving complaints and knowing refusal to take action." *See* Dkt. No. 37 at 21-22. Therefore, the Court grants Defendants' motion for summary judgment with respect to Plaintiffs' Title VII disparate treatment and retaliation claims insofar as those claims rely on incidents that occurred prior to September 2007.

### b. Hostile work environment claims

"Hostile work environment claims are different in kind from discrete [discriminatory] acts [because t]heir very nature involves repeated conduct." *Natl. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (citation omitted). A plaintiff, therefore, may base her hostile

---

[4] Plaintiff Reyes filed her EEOC charge on July 8, 2008; thus, discriminatory acts that occurred before September 12, 2007, are time-barred. Plaintiff Legg filed her EEOC charge on July 16, 2008; thus, discriminatory acts that occurred before September 20, 2007, are time-barred. Plaintiff Watson filed her EEOC charge on July 24, 2008; thus, discriminatory acts that occurred before September 28, 2007, are time-barred. Finally, Plaintiff Meadors filed her EEOC charge on July 26, 2008; thus, discriminatory acts that occurred before September 30, 2007, are time-barred.

work environment claim on events outside the limitations period as long as (1) the acts occurring before the 300-day period expired are "part of the same actionable hostile work environment practice," and (2) at least one act contributing to the claim occurs within the limitations period. *Id.* at 120.

In the present case, Plaintiffs have adduced sufficient evidence to permit the Court to find that instances of sexual harassment that occurred before the limitations period are sufficiently related to those that occurred within the limitations period. *See, e.g.,* Dkt. No. 1 at ¶ 42; Dkt. No. 35 at ¶ 5. Accordingly, the Court denies Defendants' motion for summary judgment with respect to Plaintiffs' Title VII hostile work environment claims insofar as Defendants argue that these claims are untimely.

### 4. Exhaustion of administrative remedies

"'Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency.'" *Farren v. Shaw Envtl., Inc.*, 510 F. App'x 44, 45 (2d Cir. 2013) (quoting *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006)). "A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. New York Dep't of Hous. Preservation & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993) (citations omitted). Unexhausted claims are "reasonably related" where (1) "the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination'"; (2) the plaintiff is "alleging retaliation by

an employer against an employee for filing an EEOC charge"; and (3) "a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id.* at 1402-03 (quotation and other citations omitted).

In paragraphs 77, 85, 109-114, 119-120, 133-136, and 149-150 of their complaint, Plaintiffs principally contend that Defendants retaliated against them for filing EEOC charges and/or for participating in *Negron*. *See* Complaint. In particular, Plaintiff Meadors claims that Defendants changed her work shifts to prevent her from pursuing her Master's degree, denied her leave under the Family and Medical Leave Act ("FMLA"), and failed to promote her after she filed her EEOC charge and served as a witness in *Negron*. *See id.* at ¶¶ 77-85. Similarly, Plaintiff Reyes alleges that Defendants discriminatory discharged her following her EEOC charge, *see id.* at ¶¶ 133-136; and Plaintiff Watson claims that Defendants reassigned her to a less desirable position after she filed her change, *see id.* at ¶ 149. Lastly, Plaintiff Legg avers that Corporal Charles M. Wranovics issued her first written discipline in retaliation for participation in *Negron*. *See id.* at ¶¶ 109-120.

Based on the foregoing, the Court concludes that the factual allegations in the challenged paragraphs are "reasonably related" to the allegations in Plaintiffs' EEOC charges. *See Butts*, 990 F.2d at 1402-03. Accordingly, the Court denies Defendants' motion for summary judgment with regard to Plaintiffs' Title VII claims insofar as Defendants argue that Plaintiffs have not exhausted their administrative remedies.

### 5. Liability of individual Defendants under Title VII

A plaintiff may only hold her employer, not individual employees, liable under Title VII.

*See Sheffield v. Sheriff of Rockland Cnty. Sheriff Dep't*, 393 F. App'x 808, 811 n.2 (2d Cir. 2010) (citation omitted). Therefore, the Court grants Defendants' motion for summary judgment with respect to Plaintiffs' Title VII claims insofar as Plaintiffs assert those claims against Defendants Van Blarcum, Bockelmann, Ebel, and Acevedo in their individual capacities.

**B.     The merits of Plaintiffs' Title VII claims**

*1. Summary judgment standard*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant satisfies its burden, the non-moving party must set forth "'specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation and footnote omitted).

In determining whether a genuine issue of material fact exists, "the court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor." *Consol. Risk Servs. Inc. v . Auto. Dealers WC Self Ins. Trust*, No. 1:06-CV-871, 2010 U.S. Dist. LEXIS 68401, *10 (N.D.N.Y. July 9, 2010) (citation omitted). As in any other case, "an employment discrimination plaintiff faced with a properly supported summary judgment motion must 'do more than simply show that there is some metaphysical doubt as to the material facts' . . . . She must come forth with evidence sufficient to allow a reasonable jury to find in her favor." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)) (other citation omitted); *see also Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (explaining that "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact" (citation omitted)).  Thus, in the context of employment discrimination actions, an employer is entitled to summary judgment if (1) "the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred"; or (2) "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision[.]"  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (citations omitted).

　　　With these principles in mind, the Court will address each of Plaintiffs' claims.


### 2. Plaintiffs' hostile work environment claims

　　　Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."  42 U.S.C. § 2000e-2(a)(1).  It is well-established that "a plaintiff may establish a violation of Title VII by proving that discrimination based on sex created a hostile or abusive work environment."  *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986).  To state a hostile work environment claim, a plaintiff must show that her "workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' . . . that is 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment[.]'"  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotations omitted).  If successful, the plaintiff must thereafter "show a basis for imputing [liability for] the

objectionable conduct to the employer." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010) (citation omitted).

For the work environment to be considered severe and pervasive, "[a] plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Id.* at 102 (citation omitted). "Generally, unless an incident of harassment is sufficiently severe, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Id.* (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)). "Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) (citations omitted).

In analyzing whether a plaintiff has met her burden, "courts should 'examin[e] the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance.'" *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012) (quoting *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 745 (2d Cir. 2003)).

The Court has reviewed the evidence that Plaintiffs have produced to support their hostile work environment claims, including their allegations that their co-workers and supervisors had possessed pornographic materials in workplace and often showed these materials to them and others, frequently made comments about female body parts and what they would like to do to them, made inappropriate sexual advances, displayed sexually offensive screen savers on their

computers, talked about their most recent sexual activities in front of them, and played sexually

offensive music.  Viewing this evidence in the light most favorable to Plaintiffs, the Court finds

that they have produced, albeit barely, sufficient facts to withstand summary judgment on the

issue of whether their work environment was abusive.  Although some of Plaintiffs' allegations

are not as specific as they might be, the Court cannot say that, as a matter of law, no reasonable

jury could find that a hostile work environment existed.  *See Petrosino*, 385 F.3d at 224 (finding

that "a reasonable jury could conclude that the persistent sexually offensive remarks at the

[workplace] and the graffiti at outdoor work sites were particularly insulting to women because

these actions cast women in a demeaning role: as objects of sex-based ridicule and subjects for

sexual exploitation"); *Dunbar v. Cnty. of Saratoga*, 358 F. Supp. 2d 115, 124-25 (N.D.N.Y.

2005) (denying summary judgment because a reasonable jury crediting the plaintiff's version of

the facts could determine that the defendants' "conduct, taken together, crossed the admittedly

indistinct line between 'boorish and inappropriate' behavior and actionable sexual harassment"

(citations omitted)).

Having met this initial burden, to sustain their hostile work environment claims, Plaintiffs

must demonstrate that there is a basis for imputing liability to Defendant County for the

objectionable conduct.  The Supreme Court has recently explained that,

> [u]nder Title VII, an employer's liability for [workplace]
> harassment may depend on the status of the harasser.  If the
> harassing employee is the victim's co-worker, the employer is
> liable only if it was negligent in controlling working conditions.  In
> cases in which the harasser is a "supervisor," however, different
> rules apply.  If the supervisor's harassment culminates in a tangible
> employment action, the employer is strictly liable.  But if no
> tangible employment action is taken, the employer may escape
> liability by establishing, as an affirmative defense, that (1) the

> employer exercised reasonable care to prevent and correct any
> harassing behavior and (2) that the plaintiff unreasonably failed to
> take advantage of the preventive or corrective opportunities that
> the employer provided . . . . Under this framework, therefore, it
> matters whether a harasser is a "supervisor" or simply a co-worker.

*Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (S. Ct. 2013) (internal citations omitted).

The Court further explained that

> an employer may be vicariously liable for an employee's unlawful
> harassment only when the employer has empowered that employee
> to take tangible employment actions against the victim, *i.e.*, to
> effect a "significant change in employment status, such as hiring,
> firing, failing to promote, reassigning, with significantly different
> responsibilities, or a decision causing a significant change in
> benefits."

*Id.* at 2443 (quotation omitted).

The Supreme Court, therefore, rejected the "nebulous" and "more open-ended" definition of a

supervisor that the EEOC advocated and the Second Circuit historically followed. *Id.* (citing

*Mack v. Otis Elevator Co.*, 326 F.3d 116, 126-27 (CA2 2003); EEOC, Enforcement Guidance:

Vicarious Employer Liability for Unlawful Harassment by Supervisors (1999), 1999 WL

33305874, *3 (hereinafter EEOC Guidance)) (other citation omitted).

In light of the Supreme Court's recent decision in *Vance*, the Court concludes that

Plaintiffs have not demonstrated that any of the individuals who helped to create or maintain the

hostile work environment were their "supervisors" as the Supreme Court has now defines that

term.  Specifically, Plaintiffs fail to adduce record evidence that their superior officers and

coworkers who participated in, witnessed, and/or had knowledge of the harassment had the

authority to "hir[e], fir[e], . . . promote, reassign with significantly different responsibilities, or . .

. caus[e] a significant change in [their] benefits." *Vance*, 133 S. Ct. at 2443.  Thus, the Court will

analyze the liability portion of Plaintiffs' hostile work environment claims under the co-worker negligence standard.

As previously noted, "'when the harassment is attributable to a co-worker, rather than a supervisor, . . . the employer will be held liable only for its own negligence.'" *Duch v. Jakubek,* 588 F.3d 757, 762 (2d Cir. 2009) (quoting *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 63 (2d Cir. 1998)). A plaintiff, therefore, shoulders the burden to prove "that her employer 'failed to provide a reasonable avenue for complaint' or that 'it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action.'" *Id.* (quoting *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000)).

In this case, it is undisputed that Defendant County not only has a formal, written sexual harassment workplace policy that delineates a complaint procedure to report harassment but it also conducts annual employee sexual harassment training that reviews that procedure. *See* Dkt. No. 33 at 2-3, 8, 14, 24. It is also undisputed that Plaintiffs possess a copy of the policy and attend the training. *See id.* Nonetheless, the Court finds that Plaintiffs have adduced sufficient evidence that could lead a reasonable jury to conclude that Defendant County lacks a good faith complaint procedure. *See Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1181 (2d Cir. 1996) (explaining that "[t]he question of whether an employer has provided a 'reasonable avenue of complaint' is a question for the jury . . ." (quotation omitted)); *Strasser v. Irving Tissue, Inc.*, No. 1:09-CV-00747, 2011 U.S. Dist. LEXIS 52953, *43 (N.D.N.Y. May 17, 2011) (explaining that, "[w]hile 'the existence of an anti-harassment policy with complaint procedures is an important consideration in determining whether the employer has . . . exercised reasonable care in preventing and correcting sexually harassing conduct,' . . . '[t]he mere existence of sexual

harassment complaint procedures does not immunize [a] defendant. . . .'" (internal quotations and other citation omitted)).

Evidence that indicates Defendant County's superficial stance against sexual harassment includes Plaintiff Meadors testifying at her deposition that

> I've taken several different avenues to try to rectify a bad situation through the process. I believe if you look in Sergeant Torres' Power Point presentation [used during the sexual harassment training] you'll see where if somebody approaches you and states that there is an issue with sexual harassment or discrimination it's your responsibility to act, to step up. I went to supervisors, I went to administrators, I went to the county, I went to the federal government and everything ended the same way, you know, oh, we'll look into it.

*See* Dkt. No. 29-5 at 25.

Plaintiff Meadors also testified that, although she received training and the sexual harassment policy, "the actual procedure [for complaining about harassment] does not follow the policies that [they were] given." *See* Dkt. No. 40-17 at 33-34. Moreover, Internal Affairs personnel, who receive and investigate complaints of sexual harassment and discrimination, were themselves admonished in September 2009, for transmitting pornography in the workplace. *See* Dkt. No. 35 at 17 at ¶ 5. In addition, as the Court noted in *Negron*, "Defendant Van Blarcum's callous and indifferent responses to deposition questions regarding the environment in his prison could lead a fact finder to determine that Plaintiff[s] did not have a reasonable avenue of complaint." *Negron v. Ulster Cnty.*, No. 1:08-CV-692, 2010 U.S. Dist. LEXIS 117417, *13 (N.D.N.Y. Nov. 4, 2010) (footnote omitted).

Furthermore, reading the record in a light most favorable to Plaintiffs, the Court finds that it cannot conclude, as a matter of law, that Defendant County had no knowledge of Plaintiffs'

complaints. The parties significantly dispute the extent of Plaintiffs reporting the alleged harassment, as each provided contradictory narratives of what occurred. In addition, on January 16, 2008, the EEOC issued probable cause findings as to Ms. Negron's hostile work environment and sex discrimination claims; and, approximately eleven months later, the EEOC issued four probable cause findings as to Plaintiffs' charges. The close temporal proximity between the EEOC's probable cause findings for Ms. Negron and Plaintiffs' near identical charges could lead a reasonable jury to determine that Defendant County knew of the hostile work environment yet failed to take appropriate remedial action. In sum, based on the record evidence, the Court finds that Plaintiffs have raised sufficient material factual issues to impute liability to Defendant County for a hostile work environment. Accordingly, the Court denies Defendants' motion for summary judgment with respect to Plaintiffs' Title VII hostile work environment claims against Defendant County.

### 3. Plaintiffs' sexual discrimination claims
#### a. Plaintiffs' disparate treatment claims

Courts analyze disparate treatment claims under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff must establish a *prima facie* case by demonstrating that "'(1) [s]he is a member of a protected class; (1) [s]he is competent to perform the job or is performing [her] duties satisfactorily; (3) [s]he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on [her] membership in the protected class.'" *La Grande v. DeCrescente Distrib. Co., Inc.*, 370 F.

App'x 206, 211 (2d Cir. 2010) (quoting *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005)). If the plaintiff succeeds in proving her *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged adverse employment decision or action. *See Luciano v. Olsten Corp.*, 110 F.3d 210, 215 (2d Cir. 1997) (citations omitted). Once the defendant presents a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff "to demonstrate that [the] defendant's articulated reason for its decision is in fact a pretext for discrimination[.]" *Id.* "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (citations omitted)).

Pertinent here, "[e]veryday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII." *La Grande*, 370 F. App'x at 211 (citation omitted). "Instead, an actionable adverse employment action is 'a materially significant disadvantage with respect to the terms of [plaintiff's] employment' . . . such as 'termination of employment, a demotion . . ., a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation, . . .'" *Id.* (internal quotations omitted)). Additionally, "[a]n inference of discriminatory intent may be based upon evidence that other, similarly-situated employees who were not members of the plaintiff's protected class were treated more favorably than the plaintiff." *Griffin v. Brighton Dental Group*, No. 09-CV-6616P, 2013 U.S. Dist. LEXIS 41742, *17 (W.D.N.Y. Mar. 25, 2013) (citing *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

In this case, Plaintiffs generally allege that Defendants intentionally discriminated against them based on their sex in terms of work assignments, job responsibilities, discipline, and promotional opportunities. *See* Dkt. No. 1 at ¶ 46-47, 50-53. As a preliminary matter, to the extent that Plaintiffs challenge their work assignments as discriminatory, the Court finds that Plaintiffs' general dissatisfaction with their assignments, without advancing evidence that those assignments affected their compensation or other material benefits, do not constitute adverse employment actions. *See Klein v. New York Univ.*, 786 F. Supp. 2d 830, 847 (S.D.N.Y. 2011) (stating that "[a] university professor's dissatisfaction with course assignments when he or she 'does not allege any resulting loss in wages' is not an adverse employment action" (quoting *Boise v. Boufford*, 121 Fed. Appx. 890, 892-93 (2d Cir. 2005)).

### *(1) Plaintiff Reyes*

Plaintiff Reyes principally alleges that Defendant County treated her differently than similarly-situated male officers when it terminated her employment on October 21, 2008, for supposedly violating the Jail's policy regarding conduct unbecoming an officer. *See* Dkt. No. 29-8 at 9, 14-5, 127. Plaintiff Reyes' termination resulted from a domestic dispute that she had with her now ex-husband in November 2007. *See id.* at 19-20, 24. Specifically, upon learning that her husband was having an extramarital affair, Plaintiff Reyes confronted her husband at "his concubine's place." *See id.* at 19-20. A physical altercation ensued in which Plaintiff Reyes and her husband allegedly broke items and damaged walls. *See id.* Shortly thereafter, police officers arrested and charged Plaintiff with criminal mischief; however, Plaintiff ultimately received an adjournment in contemplation of dismissal for that charge. *See id.* at 19-20. Due to the arrest,

Defendant Van Blarcum suspended Plaintiff Reyes in November 2007; and, although she returned to work, she was suspended indefinitely in March 2008. *See* Dkt. No. 29-8 at 53. An Article 75 proceeding for Plaintiff Reyes commenced in July 2007; and the hearing officer recommended a sixty-day suspension and restoration to her position with back pay. *See id.* at 10; *see also* Complaint at ¶¶ 133-135. Despite this recommendation, Defendant Van Blarcum, then sheriff of Defendant County, fired Plaintiff Reyes effective October 21, 2008. *See* Dkt. No. 29-8 at 8, 17.

Plaintiff Reyes argues that Defendant County did not subject male officers, who were arrested for matters outside the workplace, to the same fate. *See* Dkt. No. 1 at ¶ 133. For instance, Plaintiff Reyes contends that Defendant County merely accorded male officers a "slap on the wrist" after they were criminally prosecuted for "bar room brawls"; whereas she was suspended and terminated for a domestic incident. *See* Dkt. No. 33 at 33, ¶ 42. Assessing the evidence in the light most favorable to Plaintiff Reyes, the Court concludes that she has come forward with sufficient facts to create an issue of fact as to whether Defendant County treated her differently than similarly-situated male officers with regard to discipline for matters that occurred outside the workplace. Accordingly, the Court denies Defendants' motion for summary judgment with respect to Plaintiff Reyes' Title VII disparate treatment claim based on the termination of her employment.

### *(2) Plaintiff Meadors*

As noted, any discrete discriminatory acts that occurred prior to September 2007 are untimely for purposes of Title VII. A review of the record demonstrates that Plaintiff Meadors

has not advanced any timely adverse employment actions to support her sexual discrimination

claim.  Accordingly, the Court grants Defendants' motion for summary judgment with respect to

Plaintiff Meadors' Title VII disparate treatment claim.

### (3) Plaintiff Legg

Plaintiff Legg has neither taken promotion examinations nor applied for positions on the

specialty unit teams.  *See* Dkt. No. 33 at 14, ¶ 2.  According to Plaintiff Legg, she considered

pursuing promotions but unidentified members of the Jail's administration allegedly "talked [her]

out of it."  *See id.*  In addition, Plaintiff Legg testified, without offering specific details, that she

had sought positions in booking, central control, and visits but that Defendants selected junior

male officers instead of her each time.  *See* Dkt. No. 29-3 at 75.  The Court finds that Plaintiff

Legg's conclusory assertions without any supporting facts are insufficient to state a claim.

Accordingly, the Court grants Defendants' motion with respect to Plaintiff Legg's Title VII

disparate treatment claim.

### (4) Plaintiff Watson

Plaintiff Watson neither took a promotional examination nor applied for positions on the

specialty unit teams.  *See* Dkt. No. 33 at 1, ¶ 2; 4, ¶ 15.  She unpersuasively attempts to

circumvent this fact by arguing that she did not seek promotion because she believed that she

"would not get anywhere because [she] had seen what happened in years prior."  *See id.* at 4,

¶ 15.  It is undisputed, however, that Plaintiff Watson applied for, and received, a position as an

intake officer, which belies her belief that Defendant County would not promote her because of

her sex. *See id.* at 2, ¶ 3. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff Watson's Title VII disparate treatment claim.

### b. Plaintiffs' disparate impact claims

"'To make out a prima facie case of disparate impact, a plaintiff must "(1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two."'" *Wharff v. State Univ. of N.Y.*, 413 F. App'x 406, 408 (2d Cir. 2011) (quoting *Malave v. Potter*, 320 F.3d 321, 325 (2d Cir. 2003)); *see also Knighton v. City of Syracuse Fire Dep't*, 145 F. Supp. 2d 217, 224 (N.D.N.Y. 2001) (stating that, to recover under a disparate impact claim, the plaintiff "must identify 'a specific employment practice which, although facially neutral, has had an adverse impact on [the plaintiff] as a member of a protected class'" (quotation omitted)). If the plaintiff meets her burden, the burden then shifts to the employer to offer a business necessity for the challenged employment practice. *See Smith v. Xerox Corp.*, 196 F.3d 358, 365 (2d Cir. 1999) (citation omitted). If an employer offers such a business necessity, the burden then returns to the plaintiff to "show that the employer's proffered reason was merely a pretext for discrimination." *Id.* (citation omitted); *see also Knighton*, 145 F. Supp. 2d at 225 (quotation omitted).

In this case, although Plaintiffs' third cause of action alleges disparate impact discrimination, the Court finds that Plaintiffs only argue sex discrimination based on an improper motive, which is a disparate treatment claim. Plaintiffs do not contend, as disparate impact claims require, that they suffered sex discrimination because of any specific facially neutral policy or practice. Accordingly, the Court grants Defendants' motion for summary judgment

with respect to Plaintiffs' disparate impact claims.

### 4. Plaintiffs' retaliation claims

Title VII makes it unlawful for an employer to retaliate against an employee because she has opposed an unlawful employment practice or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing . . . ." 42 U.S.C. § 2000e-3(a). Courts analyze retaliation claims under the *McDonnell Douglas* burden-shifting framework. *See Patane v. Clark*, 508 F.3d 106, 115-17 (2d Cir. 2007). To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in a protected activity; (2) her employer was aware of that activity; (3) the employer took a materially adverse action; and (4) a causal connection existed between the adverse action and the protected activity. *See Kelly v. Howard I Shapiro & Assocs. Consulting Eng'rs., P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (quotation omitted). If the plaintiff proves her *prima facie* case, the burden of production shifts to the employer to "proffer a legitimate, non-discriminatory reason for the adverse action." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001). If the employer does so, the burden shifts back to the plaintiff to demonstrate that the employer's legitimate, non-discriminatory reason is pretextual. *See id.*

On June 24, 2013, the Supreme Court issued a decision, in which it addressed "the proper standard of causation for Title VII retaliation claims." *Univ. of Texas Southwestern v. Nassar*, 133 S. Ct. 2517, 2524 (S. Ct. 2013). The Supreme Court held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test . . . . This requires proof that the unlawful retaliation would not have occurred in the absence

of the alleged wrongful action or actions of the employer." *Id.* at 2533.  In light of *Nassar*, a plaintiff can no longer defeat summary judgment by simply showing that retaliation was a motivating factor in the employer's adverse employment action. .

In this case, there is no dispute that Plaintiffs engaged in protected activity by filing EEOC charges and that Defendants were aware of that protected activity.  Therefore, Plaintiffs have met the first and second elements of their *prima facie* case.  Therefore, only the third and fourth elements are at issue.

### a. Plaintiff Meadors

Plaintiff Meadors testified at her deposition that, in May 2008, Sergeant Christopher Ferro granted her request to change her shift from the A-line (12:00 a.m. to 8:00 a.m.) to the C-line (4:00 p.m. to 12:00 a.m.) for eight to ten weeks so she could pursue an online Master's degree at Plymouth State.  *See* Dkt. No. 29-5 at 11-12.  Sergeant Ferro allegedly told Plaintiff Meadors that he was doing her a favor because she had used a lot of her sick time.  *See id.* at 11.  Within one week of Sergeant Ferro changing her shift, Plaintiff Meadors called in sick to work.  *See id.*  Shortly thereafter, Plaintiff Meadors returned to the A-line shift.  Plaintiff Meadors testified that her calling in sick, not her gender, caused Sergeant Ferro to revoke her shift change.  *See id.*

Plaintiff Meadors also alleged that, after she filed her EEOC complaint on July 26, 2008, Sergeant George Gunning assigned her to work in the male housing unit every weekend despite her seniority over male officers working the same shift.  *See id.* at 13; *see also* Dkt. No. 38-7 at 3.  Plaintiff Meadors testified, however, that she "ha[d] no idea why [Sergeant Gunning] assigned

[her] to A pod[,]" and she subjectively believed that assignments in the male housing unit were undesirable. *See* Dkt. No. 29-5 at 74.

Finally, Plaintiff Meadors testified that the intake supervisory team did not select her for an intake position in late-2008/mid-2009 because she was unafraid to question her supervisors' orders when she believed they were inconsistent with the Jail's policies or procedures. *See id.* at 74-76.

Even if the Court were to assume, for sake of argument, that any of these job assignments constituted adverse employment actions, Plaintiff Meadors' retaliation claim would still fail because her own testimony belies any indication that her protected activity was the "but-for" causation for these assignments or for her supervisors' decisions not to select her for certain positions. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff Meadors' Title VII retaliation claim.

### b. Plaintiff Watson

Plaintiff Watson asserts that, after she verbally complained about Officer Divorl's sexual harassment, Defendants effectively removed her from her desirable position in intake by scheduling her and Officer Divorl on opposite shifts. *See* Dkt. No. 29-15 at 29, 31, 33. Again, a reassignment to different position, even if a less desirable position, does not constitute a materially adverse employment action. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff Watson's Title VII retaliation claim.

### c. Plaintiff Legg

Shortly after Plaintiff Legg filed her EEOC charge on July 16, 2008, she alleges that Lieutenant Becker rescinded her request for light duty assignments during her second pregnancy and reassigned her to work in the male housing units. *See* Dkt. No. 29-3 at 13-18, 72, 75, 84, 94-96. Due to this alleged retaliatory reassignment, Plaintiff Legg avers that her inmate contact increased from one time per week to four or five times per week. *See* Dkt. No. 33 at 14-15. Plaintiff Legg also alleges that she received her first written discipline report for noting her reassignment to the male housing units in the Jail's logbook. *See* Dkt. No. 29-3 at 17.

Although Plaintiff Legg has alleged sufficient facts from which a fact finder might be able to conclude that her filing of her EEOC charge was the "but for" cause of Defendants' decision to reassign her and to discipline her, she has failed to demonstrate that these actions constitute material adverse employment actions and, thus, her retaliation claim must fail. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff Legg's Title VII retaliation claim.

### d. Plaintiff Reyes

Plaintiff Reyes claims that Defendant Van Blarcum fired her on October 21, 2008, in retaliation for filing an EEOC charge on July 2, 2008. *See* Dkt. No. 29-8 at 9, 14-15, 127. As previously discussed, Plaintiff Reyes' termination resulted from a domestic dispute with her husband in November 2007, in which she was arrested and charged with criminal mischief. *See id.* at 19-20, 24. Plaintiff Reyes, however, ultimately received an adjournment in contemplation of dismissal. *See id.* at 19-20. Due to her arrest, Defendants temporarily suspended her in

November 2007, only to suspend her indefinitely in March 2008. *See* Dkt. No. 29-8 at 53. Her suspension led to an Article 75 proceeding in July 2008. *See id.* at 10; Complaint at ¶¶ 133-135. Although the hearing officer recommended a sixty-day suspension and restoration of Plaintiff Reyes to her position with back pay, Defendant Van Blarcum fired her on the ground that she violated the Jail's policy for conduct unbecoming an officer.

Based on these facts, the Court finds that Plaintiff Reyes has raised a triable issue of fact as to whether the filing of her EEOC charge was the "but for" cause of her termination. A reasonable jury could find that Defendant Van Blarcum's decision to fire Plaintiff Reyes, a twenty-six year employee of Defendant County, rather than adopt the Article 75 hearing officer's recommendation, was in retaliation for filing her EEOC charge. Furthermore, the fact that Defendant Van Blarcum fired Plaintiff Reyes roughly three months following her EEOC charge suggests, although it is not dispositve, that Defendant County unlawfully retaliated against her. *See Bagley v. J.P. Morgan Chase & Co.*, No. 10 Civ. 1592, 2012 U.S. Dist. LEXIS 97045, *30 (S.D.N.Y. July 12, 2012) (stating that "[t]he Second Circuit has 'not drawn a bright line defining, for the purposes of a *prima facie* case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, [but it has held in at least one case] that five months is not too long to find the causal relationship'" (quoting *Gorzynski*, 596 F.3d at 110)). Accordingly, the Court denies Defendants' motion for summary judgment with respect to Plaintiff Reyes' Title VII retaliation claim.

### 5. Plaintiff Legg's pregnancy discrimination claim

The Pregnancy Discrimination Act of 1978 ("PDA") amended Title VII to clarify that

pregnancy discrimination is a form of unlawful sex discrimination. *See Morran v. Cnty. of Orange*, No. 08 CV 11286, 2012 U.S. Dist. LEXIS 16514, *8 (S.D.N.Y. Jan. 26, 2012) (citing 42 U.S.C. § 2000e(k)). The PDA provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, . . . as other persons not so affected but similar in their ability or inability to work . . . ." 42 U.S.C. § 2000e(k). Absent direct evidence of pregnancy discrimination, courts analyze such claims under the *McDonnell Douglas* burden-shifting framework. *See Morran*, 2012 U.S. Dist. LEXIS 16514, at *7.

Plaintiff Legg contends that she and her husband, who also works at the Jail, asked Sergeant Ferro not to assign her to work in the male housing units, commonly referred to as the "Pods," during her pregnancy due to the direct inmate contact that assignment requires. *See* Dkt. No. 1 at ¶ 108-109; Dkt. No. 38-9 at ¶ 88. However, on July 8, 2008, Sergeant Ferro assigned Plaintiff Legg to the Pod. *See id.* Sergeant Ferro informed Plaintiff Legg that he could not accommodate her until he got "word from above." *See id.* Plaintiff Legg worked the assigned post but recorded her assignment in the Jail's logbook. *See id.*

Plaintiff Legg thereafter submitted to Defendants a letter from her physician, recommending that she not have inmate contact while pregnant and formally requesting an accommodation not to work in the Pods. *See* Complaint at ¶ 110. The next day, Undersheriff Frank P. Faluotico, Jr. purportedly denied Plaintiff Legg any light duty assignment because, as he explained, such assignments were only awarded to employees injured on the job. Undersheriff Faluotico supposedly informed Plaintiff Legg that, if she could not perform her full duties, then she could use accrued leave or file for disability. *See id.* at ¶ 113. In addition, on July 10, 2008,

Plaintiff Legg received a written discipline report for the first time in her career for allegedly noting her assignment in the logbook. *See* Complaint at ¶ 111; Dkt. No. 38-9 at ¶ 90.

Defendants insist that they denied Plaintiff Legg a light duty assignment because it is Defendant County's standard policy to award such assignments only to employees injured on the job. However, Plaintiff Legg has come forward with evidence that Defendants have historically awarded male officers light duty assignments for off-the-job injuries such as a toothache, kidney stones, obesity, and foot surgery. *See* Dkt. No. 29-3 at 77.

Based on the evidence in the record and drawing all reasonable inferences in Plaintiff Legg's favor, the Court finds that she has come forward with sufficient evidence to raise a material issue of fact as to whether Defendants treated her differently than male officers who were similar in their ability or inability to work when they denied her a light duty assignment during her pregnancy. Therefore, the Court denies Defendants' motion for summary judgment with respect to Plaintiff Legg's pregnancy discrimination claim against Defendant County.

**C.     Plaintiffs' § 1983 claims**

Section 1983 imposes liability against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. Both individuals and municipalities are subject to liability under 1983. *See Canton v. Harris*, 489 U.S. 378, 385 (1989). Furthermore, it is well-settled that "sex-based discrimination may be actionable under § 1983 as a violation of equal protection." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) (citing *Kern v. City of*

*Rochester*, 93 F.3d 38, 43 (2d Cir. 1996)). "Accordingly, § 1983 and the Equal Protection Clause protect public employees from various forms of discrimination, including hostile work environment and disparate treatment, on the basis of gender." *Id.* "Once action under color of state law is established, the analysis for such claims is similar to that used for employment discrimination claims brought under Title VII[.]"[5] *Id.* (citations omitted).

To state a claim for individual liability under § 1983, "'a plaintiff must demonstrate a defendant's *personal* involvement in the alleged [constitutional violation] in order to establish a claim against such defendant in his individual capacity.'" *Kantrowitz v. Uniondale Union Free Sch. Dist.*, 822 F. Supp. 2d 196, 218 (E.D.N.Y. 2011) (quoting *Valenti v. Massapequa Union Free Sch. Dist.,* No. 09-CV-977 (JFB)(MLO), 2010 U.S. Dist. LEXIS 10076, 2010 WL 475203, at *8 (E.D.N.Y. Feb. 5, 2010)) (other citations omitted). Moreover, a supervisor's liability cannot be grounded on a theory of *respondeat superior*. *See Rother v. NYS Dep't of Corr. & Cmty. Supervision*, No. 1:12-CV-0397, 2013 WL 4774484, *15 (N.D.N.Y. Sept. 4, 2013) (quotation omitted). A supervisor may be considered to be personally involved if he "(1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference by failing to act on information indicating that the violation was occurring." *Id.* (citation omitted). However, "'mere linkage in the . . . chain of command is

---

[5] Title VII and § 1983 claims do differ, however, in that a plaintiff may bring a § 1983 claim against individuals, *see Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006); and such claims are subject to a three-year statute of limitations, *see Shomo v. New York*, 579 F.3d 176, 181 (2d Cir. 2009) (citation omitted).

insufficient to implicate a [supervisor] in a 1983 claim.'" *Id.* (quotation omitted).

In this case, the Court finds that Plaintiffs have failed to demonstrate that Defendant Bockelmann, Defendant Ebel or Defendant Acevedo were personally involved in the alleged constitutional violations, whether those violations are based on a hostile work environment claim or a claim of disparate treatment or pregnancy discrimination. Therefore, the Court grants Defendants' motion for summary judgment with respect to Plaintiffs' § 1983 claims against Defendants Bockelmann, Ebel and Acevedo in their individual capacities. The same, however, cannot be said for Plaintiff Reyes' claim against Defendant Van Blarcum with respect to her claim that he treated her differently than similarly situated male officers when he terminated her employment after she was arrested for a matter outside the workplace. Therefore, the Court denies Defendants' motion for summary judgment with respect to Plaintiff Reyes' § 1983 claim against Defendant Van Blarcum to the extent it is based on his decision to terminate her employment and grants Defendants' motion for summary judgment with respect to Plaintiff Reyes' § 1983 equal protection claim against Defendant Van Blarcum in all other respects.

Finally, to the extent that the Court denied Defendants' motion for summary judgment with respect to Plaintiffs' Title VII hostile work environment, disparate treatment and pregnancy discrimination claims against Defendant County, the Court denies Defendants' motion for summary judgment with respect to Plaintiffs' § 1983 claims based on those same claims against Defendant County. Likewise, to the extent that the Court granted Defendants' motion for summary judgment with respect to Plaintiffs' Title VII hostile work environment, disparate treatment and pregnancy discrimination claims against Defendant County, the Court grants Defendants' motion for summary judgment with respect to Plaintiffs' § 1983 claims based on

those same claims against Defendant County.

**D.     Qualified immunity**

Qualified immunity protects government officials from civil liability when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted); *see also Varrone v. Bilotti*, 123 F.3d 75, 78 (2d Cir. 1997) (noting that, "[s]ince qualified immunity is an affirmative defense, the defendants bear the burden of showing that the challenged act was objectively reasonable in light of the law existing at that time" (citation omitted)).  Thus, qualified immunity protects a defendant if "(1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe his conduct did not violate a clearly established constitutional right." *Hartline v. Gallo*, 546 F.3d 95, 102 (2d Cir. 2008) (quotation omitted).

In this case, it is undisputed that Plaintiffs have constitutional and statutory rights to be free from hostile work environment sexual harassment and sex discrimination in the workplace. *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 117 (2d Cir. 2004) (stating that "[i]ndividuals have a clear right . . . to be free from discrimination on the basis of sex in public employment" (citations omitted)).  Furthermore, the Court finds that reasonable officers could not differ about whether it is reasonable to believe that permitting a hostile work environment and treating similarly-situated officers differently because of their sex would not violate Plaintiffs' clearly established constitutional and statutory rights.  Accordingly, the Court denies Defendants' motion for summary judgment on the ground of qualified immunity.

# IV. CONCLUSION

Accordingly, having reviewed the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' request to sever Plaintiffs' claims and to hold separate trials for each Plaintiff is **DENIED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment with respect to Plaintiffs' claims for negligent infliction of emotional distress and their claims of discrimination under the NYSHRL is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment with respect to Plaintiff Reyes' Title VII disparate treatment and retaliation claims is **GRANTED** insofar as those claims rely on incidents that occurred prior to September 12, 2007; and the Court further

**ORDERS** that Defendants' motion for summary judgment with respect to Plaintiff Legg's Title VII disparate treatment and retaliation claims is **GRANTED** insofar as those claims rely on incidents that occurred prior to September 20, 2007; and the Court further

**ORDERS** that Defendants' motion for summary judgment with respect to Plaintiff Watson's Title VII disparate treatment and retaliation claims is **GRANTED** insofar as those claims rely on incidents that occurred prior to September 28, 2007; and the Court further

**ORDERS** that Defendants' motion for summary judgment with respect to Plaintiff Meadors' Title VII disparate treatment and retaliation claims is **GRANTED** insofar as those claims rely on incidents that occurred prior to September 30, 2007; and the Court further

**ORDERS** that Defendants' motion for summary judgment with respect to Plaintiffs' Title VII claims is **GRANTED** insofar as Plaintiffs assert those claims against Defendants Van

Blarcum, Bockelmann, Ebel and Acevedo in their individual capacities; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED** with respect to Plaintiffs' Title VII hostile work environment claims against Defendant County; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED** with respect to Plaintiff Reyes' Title VII disparate treatment claim based on her termination against Defendant County and is **GRANTED** in all other respects; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff Meadors' Title VII disparate treatment claim against Defendant County; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff Legg's Title VII disparate treatment claim against Defendant County; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff Watson's Title VII disparate treatment claim against Defendant County; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiffs' Title VII disparate impact claims against Defendant County; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff Meadors' Title VII retaliation claim against Defendant County; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff Watson's Title VII retaliation claim against Defendant County; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff Legg's Title VII retaliation claim against Defendant County; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED** with respect to Plaintiff Reyes' Title VII retaliation claim against Defendant County; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED** with respect to Plaintiff Legg's pregnancy discrimination claim against Defendant County; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff Meadors' § 1983 equal protection claims against Defendants Van Blarcum, Bockelmann, Ebel and Acevedo in their individual capacities; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff Legg's § 1983 equal protection claims against Defendants Van Blarcum, Bockelmann, Ebel and Acevedo in their individual capacities; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED** with respect to Plaintiff Reyes' § 1983 equal protection claim against Defendant Van Blarcum in his individual capacity insofar as that claim is based on her claim that Defendant Van Blarcum treated her differently than similarly-situated male officers when he terminated her employment after she was arrested for a matter outside the workplace and is **GRANTED** in all other respects; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff Reyes' § 1983 equal protection claims against Defendants Bockelmann, Ebel, and Acevedo in their individual capacities; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED** with respect to

Plaintiffs' § 1983 equal protections claims against Defendant County insofar as those claims are the same as Plaintiffs' Title VII hostile work environment, disparate treatment and pregnancy discrimination claims against Defendant County with regard to which the Court denied Defendants' motion for summary judgment and is **GRANTED** with respect to Plaintiffs' § 1983 claims against Defendant County insofar as those claims are the same as those of Plaintiffs' Title VII hostile work environment, disparate treatment and pregnancy discrimination claims against Defendant County with regard to which the Court granted Defendants' motion for summary judgment;[6] and the Court further

**ORDERS** that Plaintiffs' counsel shall initiate a telephone conference with the Court and opposing counsel, using a professional conferencing service, at **10:00 a.m.** on **Monday, November 25, 2013**, to schedule the trial of this matter.

**IT IS SO ORDERED.**

Dated: November 21, 2013
      Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

_____

[6] In sum, the claims that remain for trial are as follows: (1) Plaintiffs' Title VII hostile work environment claims against Defendant County; (2) Plaintiff Reyes' Title VII disparate treatment claim against Defendant County based on the termination of her employment; (3) Plaintiff Reyes' Title VII retaliation claim against Defendant County based on the termination of her employment; (4) Plaintiff Legg's pregnancy discrimination claim against Defendant County based on her claim that Defendants refused her request for a light duty assignment during her pregnancy; (5) Plaintiff Reyes' § 1983 equal protection claim against Defendant Van Blarcum in his individual capacity based on the termination of her employment; (6) Plaintiffs' § 1983 equal protection claim against Defendant County based on their hostile work environment claims; and (7) Plaintiff Legg's § 1983 equal protection claim against Defendant County based on her claim that Defendants refused her request for a light duty assignment during her pregnancy.