UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANN MARIE LEGG, NANCY REYES, and
PATRICIA WATSON,

                              **Plaintiffs,**

                     v.                                      1:09-CV-550
                                                                   (FJS)

ULSTER COUNTY; PAUL J. VANBLARCUM,
in his official capacity as Sheriff of the County of
Ulster and individually; RICHARD BOCKELMANN,
in his official capacity as Sheriff of the County of Ulster
and individually; BRADFORD EBEL, in his official
capacity as Superintendent of the Ulster County Jail and
individually; and RAY ACEVEDO, in his official capacity
as Deputy Superintendent of Ulster County Jail and
individually,

                              **Defendants.**
_____

| APPEARANCES | OF COUNSEL |
|---|---|
| **KLAPROTH LAW PLLC**<br>2141 Wisconsin Avenue, NW<br>Suite M3<br>Washington, D.C. 20007<br>Attorneys for Plaintiffs | **BRENDAN J. KLAPROTH, ESQ.** |
| **RANNI LAW FIRM**<br>148 North Main Street<br>Florida, New York 10921<br>Attorneys for Plaintiffs | **JOSEPH J. RANNI, ESQ.** |
| **BERGSTEIN & ULLRICH, LLP**<br>5 Paradies Lane<br>New Paltz, New York 12561<br>Attorneys for Plaintiffs | **STEPHEN BERGSTEIN, ESQ.** |

| | |
|---|---|
| **ROEMER WALLENS GOLD &** | **EARL T. REDDING, ESQ.** |
| **MINEAUZ LLP** | **MATTHEW J. KELLY, ESQ.** |
| 13 Columbia Circle | |
| Albany, New York 12203 | |
| Attorneys for Defendants | |

**SCULLIN, Senior Judge**

# MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION AND BACKGROUND

Plaintiffs were female corrections officers at the Ulster County Jail, who commenced this lawsuit in 2009 alleging, among other things, that they suffered hostile work environments under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983. *See generally* Dkt. No. 1. At this time, the only remaining issues before the Court relate to Plaintiff Watson, who alleged that other officers and her superiors made sexual comments toward her, discussed sexual acts around her, and viewed pornographic content that was visible around the workplace. *See id.* at ¶¶ 140-150; Dkt. No. 164 at 141-143. Specifically, Plaintiff Watson recalled various incidents in which a colleague, Kevin Divorl, made her uncomfortable by watching her, putting his body next to and around her, breathing down her neck, commenting on women's bodies in inappropriate magazines, and – on one occasion – bringing a massage chair into the office and using it in front of Plaintiff Watson while moaning and making vulgar remarks. *See* Dkt. No. 1 at ¶¶ 140-150; Dkt. No. 164 at 143-145; Dkt. No. 210 at 8. Following a five-day trial in 2014, the jury found in favor of Defendants on all counts except for Plaintiff Watson's Title VII and § 1983 hostile work environment claims. *See* Dkt. No. 102. The jury awarded Plaintiff Watson $200,000 for each of those claims, totaling $400,000. *See id.*

After the jury announced its verdict, the Court granted the parties an extension of time longer than the Federal Rules of Civil Procedure allowed to file post-trial motions. *See* Dkt. No. 166 at 71. Within that timeframe, but outside of the period allotted by the Federal Rules, Defendant Ulster County (hereinafter "Defendant") moved for judgment as a matter of law, or, in the alternative, for a new trial on both of Plaintiff Watson's claims. *See* Dkt. No. 121. The Court denied that motion as untimely. *See* Dkt. No. 122. In 2016, the Second Circuit vacated the Court's order denying the motions, finding that they may have been subject to waiver or equitable exception that kept them from being untimely, and it remanded so that the Court could consider in the first instance whether Plaintiff Watson waived her right to object to the untimeliness of Defendant's motions. *See* Dkt. No. 129.

On remand, the Court ruled that Plaintiff Watson constructively waived her right to object and then turned to deciding Defendant's motions. *See* Dkt. No. 198, Memorandum-Decision and Order dated August 24, 2017. With respect to Plaintiff Watson's Title VII hostile work environment claim, the Court denied Defendant's motion for judgment as a matter of law and sustained the jury's verdict; however, the Court found that the jury's award of $200,000 in damages was "clearly excessive." *See id.* at 5-7. Because the award was excessive, the Court granted Defendant's motion for a new trial on Plaintiff Watson's Title VII claim unless she agreed to a remittitur reducing the award to $75,000. *See id.* at 19, 25. She ultimately agreed to that remittitur. *See* Dkt. No. 200.[1] As to Plaintiff Watson's § 1983 claim, the Court granted Defendant's motion for judgment as a matter of law, concluding that Plaintiff Watson "did not present sufficient evidence that the hostile work environment was a result of a municipal policy

---

[1] Defendant has satisfied the judgment and paid Plaintiff Watson the $75,000 award on her Title VII claim, plus interest. *See* Dkt. No. 217.

- 3 -

or custom." *See* Dkt. No. 198 at 22. As such, the Court denied Defendant's motion for a new trial on Plaintiff Watson's § 1983 claim as moot. *See id.* at 26. Both parties appealed. *See* Dkt. Nos. 204, 205.

On appeal, Plaintiff Watson argued that the original $400,000 judgment on her two hostile work environment claims should be reinstated because the Court erred in finding that she "constructively waived" her objections to Defendant's post-trial motions. *See* Dkt. No. 210, Second Circuit Certified Order, at 13. Alternatively, she asserted that the Court erred in granting Defendant's motion for judgment as a matter of law with respect to her § 1983 claim. *See id.* Defendant argued that Plaintiff Watson could not proceed with her appeal after accepting the remittitur on her Title VII claim. *See id.* Defendant also contended that the Court erred in denying its motion for judgment as a matter of law on that Title VII claim. *See id.*

In 2020, the Second Circuit concluded that the Court appropriately found that Plaintiff Watson constructively waived her objections to Defendant's post-trial motions and that the remittitur on her Title VII claim did not preclude her from appealing with respect to her § 1983 claim. *See id.* at 17-18. The Second Circuit then concluded that the Court properly denied Defendant's motion for judgment as a matter of law on Plaintiff Watson's Title VII claim. *See id.* at 20-21. However, the Second Circuit reversed the Court's grant of judgment as a matter of law on Plaintiff Watson's § 1983 claim because – although there was insufficient evidence to show a "custom, policy, or usage" to satisfy *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) – a reasonable jury could have concluded that the pervasiveness of pornographic material in the workplace created a hostile work environment under § 1983. *See id.* at 23-25.

Because the Court granted Defendant's Rule 50 motion for judgment as a matter of law with respect to Plaintiff Watson's § 1983 claim and did not address Defendant's Rule 59 motion

for a new trial, the Second Circuit remanded this matter for the Court to consider in the first instance Defendant's Rule 59 motion. *See id.* at 25. The Second Circuit cautioned, however, that "'jury verdicts should be disturbed with great infrequency'" and stated that it was "doubtful whether this [was] a case in which disturbing the verdict would be justified." *See id.* (quoting *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012)). Additionally, finding that Plaintiff Watson provided "minimal testimony about the emotional distress caused by her working environment," the Second Circuit remanded the matter for the Court to consider in the first instance whether remittitur was appropriate under Rule 59(e) as to Plaintiff Watson's § 1983 claim. *See id.* at 25-26. With respect to that issue, the Second Circuit noted that, although the Title VII and § 1983 hostile work environment claims were separate and distinct, the amount of damages "'should bear some resemblance to each other.'" *See id.* at 26 (quoting *Negron v. Ulster Cty.*, No. 08-CV-692 (FJS), 2012 WL 3597398, at *7 (N.D.N.Y. Aug. 20, 2012)). The parties have filed supplemental memoranda to aid the Court in considering these issues. *See* Dkt. Nos. 214, 215.

## II. DISCUSSION

### A. Whether the Court should order a new trial on Plaintiff Watson's § 1983 hostile work environment claim

Rule 59(a) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a). However, a motion for a new trial is not "'a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or

otherwise taking a second bite at the apple.'" *Lundstedt v. Deutsche Bank Nat'l Tr. Co.*, No. 3:13-cv-01423 (JAM), 2020 U.S. Dist. LEXIS 22435, *5 (D. Conn. Feb. 10, 2020) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

When analyzing a motion for a new trial, the court "'may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner.'" *Id.* at *4-*5 (quoting *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012) (citation omitted)). Nonetheless, this "is not a permission slip to 'ignore the jury's role in resolving factual disputes and assessing witness credibility.'" *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 490 F. Supp. 3d 593, 616-17 (E.D.N.Y. 2020) (quoting *Mugavero*, 680 F. Supp. 2d at 558-59 (citation omitted)) (other citation omitted). Thus, "[a] trial judge 'may not freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury.'" *Id.* at 617 (quoting *Raedle*, 670 F.3d at 418 (citation omitted)). In sum, a court "may only grant a motion for [a] new trial 'if the jury has reached a seriously erroneous result or [its] verdict is a miscarriage of justice[.]'" *Lundstedt*, 2020 U.S. Dist. LEXIS 22435, at *5 (quoting *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 202 (2d Cir. 2014)).

As the Second Circuit stated in this case, "Section 1983 authorizes private suits against any 'person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *See* Dkt. No. 210 at 22 (quoting 42 U.S.C. § 1983). "Sex-based discrimination in public employment is actionable under § 1983 as a violation of the Equal Protection Clause of the Fourteenth Amendment, which protects 'public employees from various forms of discrimination, including hostile work

- 6 -

environment . . . on the basis of gender.'" *Id.* (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)). "The threshold standard for proving a hostile work environment claim is generally the same for both Title VII and § 1983." *Id.* (citation and parenthetical omitted). "To establish a hostile work environment claim . . . a plaintiff must show that the 'workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (internal citations and quotation marks omitted)).

The Court finds that the jury did not reach a seriously erroneous result in rendering a verdict in favor of Plaintiff Watson on her § 1983 hostile work environment claim. As the Court discussed in its decision upholding Plaintiff Watson's Title VII hostile work environment claim, there were three relevant groups of facts about which the jury learned during the trial: (1) the 2005 allegations regarding Divorl's conduct during training; (2) general complaints regarding pornographic magazines and screensavers; and (3) Divorl's 2007 comments involving the massage chair. *See* Dkt. No. 198 at 18. With respect to the 2005 allegations, Plaintiff Watson testified that Divorl made her feel uncomfortable when he came up behind her, breathed down her neck, and stared at her. Plaintiff Watson complained to Corporal Ferro, who refused to take any action. Notably, Defendant did not rebut Plaintiff Watson's account of her 2005 complaints.

Next, all Plaintiffs testified regarding the inappropriate material that was present in the Ulster County Jail, which included pornographic magazines, such as Playboy, Maxim, and Hustler, and that at least four supervisors had sexually explicit screensavers. Plaintiff Reyes

also testified regarding vulgar music that other officers played and that her supervisor brushed off her complaints.  As the Second Circuit pointed out, it "has specifically recognized that the mere presence of pornography in a workplace can alter the 'status' of women therein and is relevant to assessing the objective hostility of the environment."  *Patane v. Clark*, 508 F.3d 106, 114 (2d Cir. 2007) (citing *Wolak v. Spucci*, 217 F.3d 157, 160-61 (2d Cir. 2000)); *accord* Dkt. No. 210 at 24.  Additionally, Plaintiffs complained about repeated sexual comments that other officers and supervisors made about them or others while in their presence, including about the women in the explicit magazines.  Officers also allegedly touched Plaintiff Legg inappropriately.  The Court finds that such sexual comments and touching are more than a "mere offensive utterance" and instead reveal a "pattern in which female employees . . . could expect sexual remarks and other harassment at any time."  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010) (internal quotation marks omitted).

      Finally, Plaintiff Watson testified with respect to the massage chair incident in which Divorl brought the chair to work, asked her to sit in it, and when she refused, he sat in the chair and began moaning and making vulgar comments about how it felt to him.  Plaintiff Watson explained that she complained to Corporal Toolan, who relayed that information up the chain of command until it reached Lieutenant Becker, who had a meeting with Plaintiff Watson and Divorl.  She testified that Lieutenant Becker asked her if she wanted Divorl fired, and she did not, so she signed a letter stating that the matter was resolved even though it was not.  Plaintiff Watson explained that she was alone, in a room by herself with two superiors and Divorl, and she felt she did not have a choice but to sign the letter.  As the Court explained previously, Plaintiff Watson's "testimony paints a picture of a meeting where she was intimidated into agreeing that she did not want to pursue a formal complaint and was not given any option

between having Divorl fired and proceeding informally." *See* Dkt. No. 198 at 19. "Furthermore, including Divorl, the alleged harasser, in the meeting to address a sexual harassment complaint appears to have directly contradicted Defendant's own policy of handling claims with 'the utmost discretion.'" *See id.* (citing Dkt. No. 137-1 at 7).

Thus, based on the foregoing evidence, the Court finds that Plaintiff Watson sufficiently showed that the workplace was permeated with intimidation, ridicule, and insult to such an extent that a jury could properly conclude that it constituted a hostile work environment. Accordingly, the Court denies Defendant's motion for a new trial on Plaintiff Watson's § 1983 claim.

**B. Whether remittitur is appropriate as to Plaintiff Watson's § 1983 claim**

"It is well established that the trial judge enjoys 'discretion to grant a new trial if the verdict appears to [the judge] to be against the weight of the evidence,' and that '[t]his discretion includes overturning verdicts for excessiveness and ordering a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur).'" *Lore v. City of Syracuse*, 670 F.3d 127, 176-77 (2d Cir. 2012) (quoting *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 433, 116 S. Ct. 2211, 135 L. Ed. 2d 659 (1996) (internal quotation marks omitted)). "A conditional order of remittitur, requiring a plaintiff to choose either a new trial or a reduced verdict, may be granted where, *inter alia*, 'the award is intrinsically excessive in the sense of being greater than the amount a reasonable jury could have awarded, although the surplus cannot be ascribed to a particular, quantifiable error.'" *Id.* at 177 (quoting *Shu-Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 49 (2d Cir. 1984) (internal quotation marks omitted)); (citing *Kirsch v. Fleet Street, Ltd.*, 148 F.3d at 165). "'Where there is no particular discernable error, [the Second Circuit] ha[s] generally held that a jury's damage award may not

be set aside as excessive unless "the award is so high as to shock the judicial conscience and constitute a denial of justice[.]"'" *Lore*, 670 F.3d at 177 (quoting [*Kirsch,* 148 F.3d at 165] (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 13 (2d Cir. 1988) (other internal quotation marks omitted))). "In determining whether a compensatory damage award is excessive, courts consider 'amounts awarded in other, comparable cases.'" *EEOC v. United Health Programs of Am., Inc.*, No. 14-CV-3673 (KAM)(JO), 2020 U.S. Dist. LEXIS 39587, *36 (E.D.N.Y. Mar. 6, 2020) (quoting *DiSorbo*, 343 F.3d at 183 (citing *Mathie v. Fries*, 121 F.3d 808, 813 (2d Cir. 1997)) (other citation omitted).

"In the Second Circuit, non-economic damages can fall into one of three categories—garden-variety, significant, or egregious." *Lewis v. Am. Sugar Ref., Inc.*, 325 F. Supp. 3d 321, 364 (S.D.N.Y. 2018). "Awards compensating garden-variety emotional distress or mental anguish in the Second Circuit range from $30,000 to $125,000." *Id.* (collecting cases); *see United Health Programs of Am., Inc.*, 2020 U.S. Dist. LEXIS 39587, at *45; *MacCluskey v. Univ. of Conn. Health Ctr.*, No. 3:13-cv-1408 (MPS), 2017 U.S. Dist. LEXIS 23520, *48-*49 (D. Conn. Feb. 21, 2017). Courts in this District have recently found awards of $40,000 or $50,000 to be appropriate for garden variety emotional distress claims resulting from a hostile work environment where the plaintiff's emotional distress did not require medical treatment or result in physical manifestation. *See White v. New York State Office of Children & Family Servs.*, No. 5:11-CV-309 (FJS/ATB), 2021 U.S. Dist. LEXIS 16061, *14 (N.D.N.Y. Jan. 28, 2021) (Scullin, S.J.) (denying new trial on condition that the plaintiff accepts $50,000 remittitur on hostile work environment claim); *Dotson v. City of Syracuse*, No. 5:04-CV-1388 (NAM/GJD), 2011 U.S. Dist. LEXIS 20374, *61 (N.D.N.Y. Mar. 2, 2011) (Mordue, C.J.) (same); *Negron v. Ulster Cty.*, No. 1:08-CV-692 (FJS/RFT), 2012 U.S. Dist. LEXIS 117142,

\*23 (N.D.N.Y. Aug. 20, 2012) (Scullin, S.J.) (finding $40,000 remittitur appropriate to compensate Plaintiff's Title VII hostile work environment claim). Finally, "the amount of damages awarded for [Title VII and § 1983] claims should bear some resemblance to each other." *Negron*, 2012 U.S. Dist. LEXIS 117142, at \*22 (footnote omitted).

At trial, Plaintiff Watson testified that, after she started working with Divorl five nights per week, she "began to withdraw from [her] life" and from her children. *See* Dkt. No. 164 at 148. She testified that she began having "marital issues" because she "couldn't talk to [her] husband." *See id.* Plaintiff Watson further explained that she "became very depressed, very anxious," had a hard time with "day-to-day life," and hated going to work. *See id.* On cross-examination, Plaintiff Watson testified that she had "emotional problems" unrelated to her work as well. *See id.* at 149. She was prescribed Pristiq and Xanax because of her emotional distress related to work, and she stated that she received those medications "in relation to what was going on with [her] husband and [her] as a result of what was going on with [her]." *See id.* Notably, Plaintiff Watson did not submit any medical evidence to support these claims nor did any family members or friends testify to her condition. The jury awarded her $200,000 as compensation for her emotional distress on her § 1983 hostile work environment claim. *See* Dkt. No. 98.

Based on this testimony regarding Plaintiff Watson's emotional distress, the Court finds that her emotional injuries were "garden variety," thus falling within the $30,000 to $125,000 range for appropriate compensation. As such, the Court further finds that the jury's $200,000 verdict for her emotional distress was excessive and shocks the judicial conscience. Defendant requests that Plaintiff Watson receive de minimis compensation for her emotional injuries amounting to no more than $30,000. *See* Dkt. No. 214. Plaintiff Watson, on the other hand,

argues that the Court should not reduce the award any lower than $75,000, which is the amount that she accepted on remittitur on her Title VII claim. *See* Dkt. No. 215. Considering Plaintiff Watson's emotional injuries, the lack of corroborative support, her $75,000 award on her nearly identical Title VII claim, and awards in this District to similar plaintiffs alleging § 1983 hostile work environment claims, the Court conditionally grants Defendant's motion for a new trial limited to the issue of compensatory damages with respect to this claim unless Plaintiff Watson agrees to a remittitur reducing the award to $75,000.

### III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, *see* Dkt. No. 121, is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for a new trial limited to the issue of compensatory damages is **CONDITIONALLY GRANTED** unless Plaintiff Watson agrees to a remittitur of the compensatory damages award to **$75,000** on her § 1983 hostile work environment claim. Plaintiff Watson shall notify the Court and opposing counsel in writing

within **twenty (20) days of the date of this Memorandum-Decision and Order** whether she will accept this remittitur. If Plaintiff Watson does not accept this remittitur, the Court will schedule a new trial limited to the issue of compensatory damages.[2]

**IT IS SO ORDERED.**

Dated: March 29, 2022
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

---

[2] If Plaintiff Watson intends to accept the remittitur, then, within **14 days** of her notifying the Court and opposing counsel of that intent, Defendant shall file its response in opposition to her pending motion for counsel fees, *see* Dkt. No. 201. If Plaintiff Watson deems it necessary, she shall file her reply memorandum in further support of her motion for counsel fees within **7 days** of Defendant filing its response.